Wilma Urch COLVILLE, Executrix of the Last Will and Testament of Charles J. Colville, Deceased, Plaintiff-Appellant,

v.

Isabelle C. KOCH, Individually and as Administratrix of the Estate of Edward Cebrian, Deceased, Defendant-Appellee.

No. 14741.

United States Court of Appeals
Ninth Circuit.
May 24, 1956.

Carl Hoppe, San Francisco, Cal., for appellant.

Charles D. Sooy, San Francisco, Cal., for appellee.

Before McALLISTER, POPE, and CHAMBERS, Circuit Judges.

McALLISTER, Circuit Judge.

Charles J. Colville brought suit in the district court on a promissory note against Isabelle C. Koch, administratrix of the estate of Edward Cebrian, deceased. The plaintiff claimed that he had been deprived, through the fraudulent probate of the estate by Mrs. Koch in San Francisco, of the right to file his claim, and that the fraud consisted in Mrs. Koch's representation that her brother had been a resident of San Francisco at the time of his death, whereas, in reality, he had been a resident of Los Angeles; and plaintiff, accordingly, claimed that the notices for the filing of claims should have been published in Los Angeles County instead of San Francisco, which circumstance, he alleged, prevented him from duly filing his claim.

During the litigation, Mr. Colville died, and his wife, Wilma Urch Colville, as his executrix, was substituted as party-plaintiff. The district court denied recovery on the note, and Mrs. Colville, as executrix, appeals.

The background of the case is as follows: On November 15, 1932, Edward Cebrian executed a promissory note in the amount of $10,276.92, with interest at 6%, payable six months thereafter, to John S. Barbee or his order, at Lexington, Kentucky. The note was headed: "San Francisco, California."

Mr. Cebrian was born in San Francisco and lived in that city most of his life. He died in Los Angeles, June 6, 1944, at the age of sixty-two. As far as the evidence in this case discloses, no one had ever made a demand for payment of the above note until the filing of this suit, November 6, 1952, nearly twenty years after its execution, and nineteen and a half years after it became due; and no interest had ever been paid upon the note.

On February 9, 1945, Isabelle C. Koch, defendant-appellee, a sister of Mr. Cebrian, filed a petition for letters of administration of his estate in the Superior Court of the State of California in and for the County of San Francisco; and on February 11, 1945, she caused notice of the hearing of the petition to be given for the time and in the manner required by law. In her petition, she alleged that Mr. Cebrian had died in the County of Los Angeles, but that, at the time of his death, he was a resident of the City and County of San Francisco. Nine days after filing her petition in San Francisco, appellee administratrix also filed a petition for letters of administration in her brother's estate in the Superior Court of the State of California in and for the County of Los Angeles, alleging that at the time of his death, he was a resident of that city, and caused notice of the hearing of the Los Angeles petition to be given in the manner and for the time required by law. Appellee filed the second petition in Los Angeles on advice of her counsel and for the reason, as she stated, that she did not know which place the court would consider to have been the legal residence of Mr. Cebrian.

The Superior Court in San Francisco determined that Edward Cebrian had been a resident of that city at the time of his death. Appellee administratrix thereupon proceeded to the probate of his estate in San Francisco and abandoned any further proceedings in Los Angeles.

In the suit upon the note brought by appellant's decedent, it was alleged that Edward Cebrian was a resident of Los Angeles at the time of his death; that Isabelle C. Koch, administratrix of Mr. Cebrian's estate, after filing her petition for letters of administration in Los Angeles, fraudulently represented that Mr. Cebrian had been a resident of San Francisco at the time of his death; that she fraudulently filed a petition for letters of administration in that county; that she fraudulently concealed the existence of new assets in her brother's estate; that she fraudulently intermeddled with the jurisdiction of the Los Angeles Superior Court and failed to deliver to the jurisdiction of that court assets of her brother's estate coming into her possession; that she fraudulently intermeddled with the proper probate of her brother's estate and wrongfully obtained and retained possession and control of all of his property; and that, by her false representations that Edward Cebrian had been a resident of San Francisco at the time of his death, she fraudulently caused the Superior Court of San Francisco to grant letters of administration to her and deprived plaintiff's decedent of knowledge of the existence of the assets of Edward Cebrian and of his right to file his claim against the estate.

The district court found that appellee's only reason for filing the petition in Los Angeles was to avoid delay in the event that the San Francisco Superior Court should decide that Edward Cebrian was a resident of Los Angeles, rather than of San Francisco, at the time of his death; that at no time did appellee in-

termeddle with the proper probate of the estate of her brother, wrongfully or fraudulently, nor fraudulently conceal the existence of assets of the estate; that no acts of appellee had deprived appellant or her predecessors of their right to file claims; that the probate of the estate in San Francisco was legal and proper; that all appellant's allegations in the complaint, inconsistent with the foregoing, were untrue; that no claim was ever filed on the promissory note and that no act of appellee in connection with the probate of the estate of Edward Cebrian was done with intent to deceive, defraud, delay, or mislead creditors. As a matter of law, the district court concluded that appellant and her predecessors in interest had constructive notice of the hearing in San Francisco on appellee's petition for letters of administration; that the claim on the promissory note was forever barred for failure to file claim thereon in the probate proceedings; and that appellee had committed no fraud, extrinsic in character, with respect to the probate proceedings, either in Los Angeles or in San Francisco. The district court finally declared that, having disposed of the case in favor of appellee by express findings of fact and conclusions of law on the issue of fraud, it made no findings of fact or conclusions of law upon other issues raised by appellee in defense of the suit, including those based upon statutes of limitations, and appellant's failure to establish title to the promissory note in suit.

▆ The judgment of the district court in this case may not be reversed unless its findings of fact were clearly erroneous, or unless it committed reversible error as a matter of law, Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A.; and in determining whether the findings of the trial court in the instant case were clearly erroneous, we arrive at a consideration of the evidence.

Edward Cebrian, as has been mentioned, was born in San Francisco. His family was an old family of California, of Spanish descent. His parents, and he and his brothers and sisters, as children lived in the homestead in San Francisco, a great house of twenty rooms or more. Their life together was intimate. They celebrated together, in San Francisco, the feast days of the great Spanish saints; and several of the members of the family continued to live in the old home even in their later years. When the various members of the family were not in San Francisco, they spent much of their time in Europe, especially in Spain. Mr. Cebrian was educated, first, in San Francisco, and afterward in Europe, returning eventually to finish his education at the University of California at Berkeley. In 1935, Mr. Cebrian's father died while staying in Madrid. His mother had died in 1920. Among other properties his father owned was the Cuyana Rancho, an historic Spanish ranch of more than 44,000 acres, coming down to the family from an ancient grant, and located in Santa Barbara and San Luis Obispo Counties. In 1932, his father gave the Cuyana Rancho to his four sons. The old home in San Francisco was bequeathed by his father to Ralph Cebrian, a brother of Edward. At that time, the two brothers were living in the home. The other children had married and moved away. After the father had given the Cuyana Rancho to his sons, it was operated by Ralph and Edward. Ralph spent most of his time in their office in San Francisco. Edward lived on the ranch from time to time, as well as in Kentucky where he had entered into the business of breeding horses. Shortly after the father's death, Ralph was obliged to sell the family home in satisfaction of a debt. The Cuyana Rancho had, at some time not disclosed by the record, become mortgaged in the amount of $450,000. In 1938, the family lost title to the ranch. Edward Cebrian thereafter had a lease arrangement with the bank which had foreclosed the mortgage, and attempted to raise money to regain the title, but after many efforts, was unsuccessful. In the same year of 1938, Ralph, after selling the home in San Francisco, moved out, and a few

days later, Edward also left the family home for good. Ralph went to a small apartment, and Edward, to the Palace Hotel; but eventually, he ran out of funds. His sister, appellee administratrix in this case, told him that if he would arrange to go to Los Angeles, he could find a less expensive place to live than in San Francisco, and that she would do her best to help him as much as she could. On the hearing, his sister testified that in San Francisco, he was greatly entertained by his friends and would wish to reciprocate, but that she could not afford to keep him living in the manner to which he had always been accustomed. Edward finally took her advice and went to Los Angeles. His sister contributed $200 a month to him for his support, as well as assisted in his clothing bills. He eventually secured employment as a translator in Los Angeles; but she continued thereafter contributing the same payments to him as before.

It is clear from the evidence that Edward Cebrian never wanted to leave San Francisco to go to Los Angeles. But when the family home in San Francisco was sold, and the Cuyana Rancho was gone, he was reducted to the meager pay of a translator, working in a place where rent was cheap, where he had no friends, and where he lived in a rooming house upon the bounty of his sister who gave him what she could. Yet he never gave up the hope of going back among his early friends to his boyhood home of San Francisco. Whenever any of his relatives who had been visiting him in Los Angeles were about to depart for San Francisco, he was ready, at a moment's notice, to leave Los Angeles for good; if it had been possible for him to secure living quarters in San Francisco and sufficient income to live in that city, there is no doubt that he would have returned at once; and he continued to plead with his relatives to do everything they could to make this come to pass. The proofs show that he always considered San Francisco as his home. Evidence of his registration and voting in Los Angeles and statements made while there are of little importance compared to the evidence upon which the Superior Court in San Francisco based its finding that he was a resident of the City and County of San Francisco at the time of his death; and in our view, appellant has entirely failed to prove that Isabelle C. Koch, his sister and the administratrix of his estate, was guilty of fraud of any kind or degree in the probate proceedings or in the management of the estate.

It is of interest, in this case, to find how Mr. Colville, appellant's decedent who brought suit upon the note, came into its possession. It appears that through a mutual acquaintance of Colville and members of the Cebrian family, Colville was introduced to Ralph Cebrian, and on another occasion, to Mrs. Koch, appellee administratrix, and her husband. Without any introduction to the matter, Colville declared that he was "a searcher of records"; that he had acquired the note in question in this case; that he had further, procured photostatic copies of documents in many legal proceedings in which Edward Cebrian had been a party. He said: "I go into estates and see if I can find any flaws in them in order that I might turn them over to my own personal gain." He said that he knew all about the probate proceedings filed in Los Angeles by Mrs. Koch; that he knew of judgments entered against Edward Cebrian; that he had found that oil was discovered on the Cuyana Rancho—apparently after the Cebrians lost it—and that the Richfield Oil Company had taken approximately one hundred million dollars out of this property; that he had been "looking for quail but had found much bigger game"; and that he was going to use the note of Edward Cebrian to reopen past legal proceedings and overturn former adjudications for the benefit of his own pocket. He further declared to Ralph Cebrian and to Mrs. Koch and her husband that even if they wanted to pay the note in full, he would refuse any proposition—although they had not in any way intimated that they were in the

slightest degree interested in buying up the note. At that time, the amount due on the note, with interest thereon, aggregated more than $21,000; and Colville stated that he had picked up the note from a bank in Kentucky for only $500. It does not appear, other than by his statement to Edward Cebrian's relatives, whether he ever paid anything for the note. The circumstances are not directly relevant, but indicate where the equities lie as between the parties to this suit.

 Appellant administratrix claims that her decedent acquired the note in question from the personal representative of an assignee of an assignee of the original payee, John Barbee. The assignee of the payee was a corporation, the Van Meter-Terrell Feed Company. Appellant claims title from the personal representative of Baylor Van Meter. To prove a chain to appellant, she must show that there was a transfer to Baylor Van Meter. Otherwise, the title to the note, as far as the evidence in this case goes, would still be in the corporation, the Van Meter-Terrell Feed Company. There is no proof of assignment or transfer of the note from the above named corporation to Van Meter, nor is there any proof that Van Meter was the sole owner of the corporation. Appellant has pleaded that the corporation acquired the note from the original payee. Appellee denied, in her answer, that Van Meter ever acquired the note from the corporation. Because of appellee's denial, the burden of proving the assignment from the corporation to Van Meter was on appellant; and she failed to establish such assignment and title to the note. See Cockerell v. Title Insurance & Trust Co., 42 Cal.2d 284, 267 P.2d 16.

In addition to the foregoing, it appears that appellant's suit is barred by the statute of limitations. Under Section 337(1) of the Code of Civil Procedure of California, any action in that state on the note payable on May 15, 1933, was barred four years thereafter, unless it contained a waiver of the statute of limitations. There was no such waiver in the note in suit. Action upon the note was not brought until subsequent to the expiration of the statute of limitations.

In accordance with the foregoing, the judgment of the district court is affirmed.